## A07A0773. SHERROD v. TRIPLE PLAY CAFÉ, LLC et al.
### (647 SE2d 376)

ADAMS, Judge.

Ann G. Sherrod appeals from summary judgment entered in favor of the defendants in this slip and fall suit. In her complaint, she alleged that she fell on the transition between two types of flooring in a sports-theme restaurant that had a children's indoor playground. She claims that she was distracted watching her own grandchild and that she did not see the transition between the dark, rubberized mat flooring and a green, astroturf-type surface. She alleged that the surfaces were uneven and created a hazard. The defendants are Triple Play Café, LLC and its owners Roswell Lindsey Walker, Jr. and Devra P. Walker.

An owner or occupier of land has a duty of exercising ordinary care to keep the premises and approaches safe for any invitees. OCGA § 51-3-1. However, an owner or occupier of land is not an insurer of an invitee's safety. Rather, an invitee seeking to recover for slip and fall injuries must prove "(1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." *Robinson v. Kroger Co.*, 268 Ga. 735, 748-749 (2) (b) (493 SE2d 403) (1997).

The undisputed facts show that a rubberized mat was used under and for some distance around a large jungle gym in order to protect children playing on that equipment from the concrete floor below. The astroturf was located around the entryway to the room, extending out a limited distance from the door. Where the two surfaces met, the rubberized mat sloped from a two-inch height to approximately one-quarter inch; Sherrod testified that "it was pretty steep. . . ." There is no information in the testimony regarding the height of the astroturf surface or whether there was any overlap in the two surfaces.[1] The photograph shows that the transition between the two floor coverings is clearly visible. There were no signs with a specific warning about the floor covering although there was a general warning sign to proceed with caution. The owners did not believe the transition to be a hazard.

This was Sherrod's first visit to the restaurant. Although she did not remember doing so, Sherrod stepped from the astroturf up onto

---

[1] The trial court concluded from the testimony and from looking at a picture, that the astroturf was positioned in such a way that the difference in height where the two surfaces met was at most one quarter inch. But this conclusion amounts to a factual finding that is not proper when considering a motion for summary judgment. Construed in favor of the plaintiff, the evidence shows that the slope of the rubber mat was fully exposed and that there was a change in height between the two surfaces of nearly two inches.

the rubber mat immediately after entering the playroom and she stood around on the rubber mat with relatives for five or ten minutes. At one point, she began to pursue her grandchild across the rubber mat back toward the door area, and as she did she stepped on the edge of the mat, tripped and fell, and severely injured her arm and broke her nose. She testified,

> I had on sandals that had the non-skid, you know, the rubber — whatever you call them soles. And the heel of it caught on the top of the foam and my foot went down on this incline and it did not slide.

> So when it went this way, I went down, with nothing to grab onto. . . .

> I didn't step off. My heel was on the [mat], but I was on the very edge where it slants and my foot went this way. . . . And when my foot went this way, it didn't slide. And it hung right there and when it did, I had to go somewhere because my foot was going down and that threw my balance forward. . . .

> The heel was on the top edge. And because it wasn't a level surface, because it was like this, it went further down, which basically threw me forward. So I don't know whether my toe came out on the green or not.

She was looking at her grandchild at the time because she was concerned about the fact that the two-year-old had recently recovered from a broken arm.

Although Sherrod testified that it was "fairly dark" in the playroom due to some window tinting, she also testified that there were lights and she would have seen the transition if she had looked down. Sherrod has not introduced any evidence or expert testimony to show that the design of the transition between the two surfaces fell below any standard of care or that it violated any law, safety code, or other regulation. And she has not introduced evidence to show that the defendants knew of any problems with the transition area. The defendants were aware of transition and the nature of it, but they testified they had no knowledge of any customer ever falling on the small slope between the rubber mat and the astroturf during the three years that the business had been open. Sherrod contends the defendants' superior knowledge of the flooring design and its uneven transition made them, or should have made them, aware of the potential danger.

But regardless of whether the defendants had knowledge of a defect in the transition area, any possible defect was static and Sherrod had already negotiated it once. It has been well established, even after *Robinson v. Kroger Co.*, that "a claim involving a static defect differs from other slip and fall cases in that when a person has successfully negotiated an alleged dangerous condition on a previous occasion, that person is presumed to have knowledge of it and cannot recover for a subsequent injury resulting therefrom." (Citations and punctuation omitted.) *Gantt v. Dave & Buster's of Ga.*, 271 Ga. App. 457 (610 SE2d 116) (2005). In *Gantt*, the plaintiff had stepped up onto a raised platform to play a video game and fell when she "stepped back down the same single step." The same is true here. Sherrod had already stepped from the bright green astroturf flooring up and onto the dark rubber mat about five minutes before her fall. She admitted that it was visible if she had looked at it. And she was not distracted by her grandchild for this entire five-minute period. Therefore she is presumed to have knowledge of the transition area that she had already negotiated. Id. See also *Rowland v. Murphy Oil USA*, 280 Ga. App. 530, 533 (634 SE2d 477) (2006). Accordingly, we affirm.

*Christensen v. Overseas Partners Capital*, 249 Ga. App. 827, 830 (2) (549 SE2d 784) (2001), upon which Sherrod relies, is distinguishable. In that case, this Court explained that it could not conclude the plaintiff had negotiated the defect itself, whereas here, there is no question that Sherrod had stepped up onto the rubber mat from the astroturf after she entered the room.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED JUNE 5, 2007.

*Christy C. Balbo*, for appellant.
*Martin Kent, P.C., A. Martin Kent, Catherine M. Palumbo*, for appellees.